UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| DANNI LYNN WINTER, )<br>SUSAN BRAWNER, TYBER WARD )<br>SATIOUS MARTINEZ, )<br>and ANTHONY BARELA )<br>  ) <br>Plaintiffs, )<br>  )<br>v. )<br>  )<br>NEW MEXICO DEPARTMENT OF )<br>WORKFORCE SOLUTIONS and )<br>RICKY SERNA in his official capacity )<br>as Acting Secretary of the New Mexico )<br>Department of Workforce Solutions, )<br>  )<br>Defendants. )<br>  )<br>  )<br>_____ ) | No. _____<br><br>**COMPLAINT FOR DECLARATORY<br>AND INJUNCTIVE RELIEF** |

## I.    INTRODUCTION

COME NOW Danni Lynn Winter ("Plaintiff Winter"), Susan Brawner ("Plaintiff Brawner"), Tyber Ward ("Plaintiff Ward"), Satious Martinez ("Plaintiff Martinez"), and Anthony Barela ("Plaintiff Barela"), the Plaintiffs, by and through New Mexico Legal Aid, Inc. (Alicia Clark). Plaintiffs are New Mexico residents who have been denied access to disaster assistance/unemployment benefits due to them under federal law.

1

## II.     FACTS

1. On March 11, 2020, when it became apparent that a deadly respiratory virus had arrived in the State, Governor Michelle Lujan Grisham used her emergency powers to declare a public health emergency for the State of New Mexico.

2. Two days later, on March 13, 2020, the State's Department of Health issued the first of several orders banning mass gatherings. On the same date, the Public Education Department ordered the temporary closure of all New Mexico public schools.

3. On March 23, 2020, the Department of Health issued a "shelter-in-place" public health order defining "essential business" and requiring all non-essential businesses to reduce their in-person workforce by 100%. The Department of Health order directed all New Mexicans to "stay at home and undertake only those outings necessary for their health, safety and welfare." NM Dept. of Health press release (March 23, 2020).

4. These orders were made in order to stem the transmission of SARS-CoV-2 (Severe Acute Respiratory Syndrome Coronavirus 2), hereinafter referred to as "COVID-19."

5. The aforementioned essential public health measures forced many businesses to close their doors, resulting in unprecedented unemployment numbers in the State.

6. On March 27, 2020 Congress responded to the COVID-19 crisis ( "COVID-19 Pandemic") by enacting The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which included the largest expansion of unemployment benefits

in U.S. history. The expansion increased weekly benefit amounts, extended eligibility periods and made unemployment benefits available to categories of people ineligible for standard state-funded unemployment insurance. In New Mexico, these new federal unemployment benefit programs (called Pandemic Unemployment Assistance ["PUA"], Federal Pandemic Unemployment Compensation ["FPUC"], and Pandemic Emergency Unemployment Compensation ["PEUC"]) are administered by Defendants.

7. The PUA program was established under the CARES Act to provide disaster assistance to those unemployed due to the COVID-19 Pandemic and ineligible for standard, state-funded unemployment insurance.

8. Standard state-funded unemployment insurance ("UI"), a program also administered by Defendants, is available to temporarily displaced W-2 wage earners who have qualifying circumstances of separation from employment and who are able and available to work and actively seeking employment.

9. The CARES Act provides that those unemployed due to certain enumerated COVID-19 Pandemic-related reasons and ineligible for UI are eligible for PUA.

10. FPUC is a federally funded supplemental unemployment insurance benefit created under the CARES Act. Those eligible for at least $1 of either PUA or UI during weeks for which Congress authorized FPUC are entitled to receive FPUC in addition to their weekly PUA or UI benefit.

11. PEUC is an emergency unemployment program established by the CARES Act and designed to help those affected by the COVID-19 Pandemic by providing additional weeks of benefits to those whose underlying claims for PUA or UI have expired.

12. Eligibility for FPUC and PEUC derives from underlying eligibility for PUA or UI benefits.

13. The PUA, FPUC and PEUC programs are federal-state cooperative programs administered by Defendants in New Mexico.

14. Plaintiffs have a legitimate claim of entitlement to the federal benefits created under the CARES Act outlined herein. Plaintiffs bring this action because Defendants have failed and refused to allow Plaintiffs to apply for PUA, FPUC and PEUC benefits.

15. Plaintiffs are suing under 42 U.S.C. Section 1983, a civil rights law passed by Congress that provides a remedy to persons who have been deprived of their federal constitutional rights under color of state law.

### III.   JURISDICTION AND VENUE

16. This Court has jurisdiction over this action pursuant to 28 U.S.C. Sections 1331 and 1343(3), in that the controversy arises under the U.S. Constitution and laws of the United States, and under 42 U.S.C. Section 1983 and 28 U.S.C. Section 2201.

17. This Court has jurisdiction over claims raised under the U.S. Constitution and laws of the United States pursuant to 42 U.S.C. Section 1983.

18. Title 42 U.S.C. Section 1988 provides authority to award attorney's fees for claims brought under 42 U.S.C. Section 1983.

19. Venue is proper under 28 U.S.C. Section 1391 because the Plaintiffs reside in this district, the New Mexico Department of Workforce Solutions is a state agency operating within this district, and the events giving rise to the claims occurred in this district.

20. Declaratory and injunctive relief are authorized by The Declaratory Judgment Act, 28 U.S.C. Sections 2201 and 2202.

21. Title 42 U.S.C. Section 1983 provides a cause of action against "[e]very person" who, acting under color of state law, violates rights guaranteed by the federal constitution and laws.

## IV.     STATUTORY FRAMEWORK

22. Under Section 2102(a)(3) of the CARES Act[1], as amended, the definition of "covered individual" for the purpose of eligibility for PUA benefits includes an individual who is not eligible for regular compensation or extended UI or PEUC under Section 2107, including those who have exhausted those benefits and who self-certify to being otherwise able and available for work within the meaning of applicable state law, except that the individual is unemployed, partially unemployed, or unable or unavailable to work for one of the following reasons:

   a. either the individual has been diagnosed with COVID-19 or is experiencing symptoms of COVID-19 and is seeking a medical diagnosis,

   b. a member of the individual's household has been diagnosed with COVID-19,

---

[1] Title 15 U.S.C. § 9021(a)(3).

c. the individual is providing care for a family member or household member who has been diagnosed with COVID-19,

d. a child or other person in the household for which the individual has primary caregiving responsibility is unable to attend school or another facility that is closed as a direct result of the COVID-19 public health emergency and such school or facility care is required for the individual to work,

e. the individual is unable to reach the place of employment because of a quarantine imposed as a direct result of the COVID-19 public health emergency,

f. the individual is unable to reach the place of employment because the individual has been advised by a health care provider to self-quarantine due to concerns related to COVID-19,

g. the individual was scheduled to commence employment and does not have a job or is unable to reach the job as a direct result of the COVID-19 public health emergency,

h. the individual has become the breadwinner or major support for a household because the head of the household has died as a direct result of COVID-19,

i. the individual had to quit his or her job as a direct result of COVID-19,

j. the individual's place of employment is closed as a direct result of the COVID-19 public health emergency,

    k. the individual is self-employed and experienced a significant reduction of his/her/their customary or usual services because of the COVID-19 public health emergency,

    l. the individual was denied continued unemployment benefits because of a refusal to return to work or to accept an offer of work at a worksite that, in either instance, was not in compliance with local, state, or national health and safety standards directly related to COVID-19,

    m. the individual provides services to an educational institution or educational service agency and is unemployed or partially unemployed because of volatility in the work schedule that is directly caused by the COVID-19 public health emergency,

    n. the individual was an employee whose hours were reduced or who was laid off as a direct result of the COVID-19 public health emergency,

23. The Consolidated Appropriations Act, 2021 extends the provisions pertaining to the CARES Act programs outlined herein through March 14, 2021.

24. The American Rescue Plan Act of 2021 further extends provisions pertaining to the CARES Act programs outlined herein through September 6, 2021.

## V.    PLAINTIFFS

25. Plaintiffs are natural persons to whom Defendants have denied access to benefits either by (1) denying Plaintiffs, through actions or omissions, the opportunity to apply for PUA benefits, or by (2) affirmatively refusing Plaintiffs access to the PUA

program by refusing to process written PUA applications prepared and submitted to Defendants' counsel via Plaintiffs' counsel.

26. As a direct result of their actions and omissions denying Plaintiffs access to the PUA program, Defendants have prevented Plaintiffs from accessing PUA and derivative benefits through the PEUC and FPUC programs.

27. Plaintiffs are suffering irreparable injury from the Defendants actions and omissions as set forth herein, and will continue to suffer irreparable injury until the relief sought herein is granted.

<u>Danni Lynn Winter</u>

28. Plaintiff Winter was forced to quit her job at a Verizon call center so that she could care for her grandson, who lost his childcare due to the COVID-19 Pandemic.

29. Before the COVID-19 Pandemic, Plaintiff Winter had already been performing her job duties virtually, from a private room in her home. Plaintiff Winter lost her private room when changed economic circumstances caused by the COVID-19 Pandemic required her to share housing with family members.

30. Since Verizon required employees working from home to have a private, secured room from which to work in order to ensure the privacy of client personal information, and since working virtually was Plaintiff Winter's only option (due to state-mandated restrictions), Plaintiff Winter was forced to quit her job when her living situation changed.

31. Plaintiff Winter applied for UI benefits in or around April of 2020 and was denied.

32. Although Plaintiff Winter met the CARES Act's definition of a "covered individual," Defendants did not give her the option to apply for PUA.

33. On July 31, 2020 counsel for Plaintiff Winter emailed a letter to counsel for Defendants requesting that Defendants allow her to apply for PUA benefits and assist her in doing so, *inter alia*.

34. Through a letter dated October 9, 2020, Defendant New Mexico Department of Workforce Solutions, through counsel, implicitly denied the PUA application, stating: "[I]n order to be eligible for PUA, a claimant must be ineligible for standard unemployment benefits. Ms. Winter is not 'ineligible' because she was determined monetarily eligible for benefits. She was subsequently disqualified because of her quit separation under NMSA 1978 § 51-1-7(A)."

35. Plaintiff Winter's claim for PUA rests, in part, on the fact that she was no longer able to work due to her childcare responsibilities, See Paragraph 22(d), *supra*.

36. Plaintiff Winter's claim for PUA also rests on the fact that she had to quit her job as a direct result of the COVID-19 Pandemic. See Paragraph 22(i), *supra*.

37. Plaintiff Winter meets the definition of "covered individual" found in the CARES Act, Section 2102(a)(3)(A)(ii)(I)(dd) and Section 2102(a)(3)(A)(ii)(I)(ii) and thus has a colorable claim for PUA benefits.

Susan Brawner

38. Plaintiff Brawner was laid off from her job at La Casa Fina, a vintage furniture/housewares store, in March of 2020 when La Casa Fina closed its doors due to the COVID-19 Pandemic.

39. Plaintiff Brawner had voluntarily quit her previous job to start working at La Casa Fina just before the start of the COVID-19 Pandemic.

40. Plaintiff Brawner applied for UI and was denied.

41. Although Plaintiff Brawner met the CARES Act's definition of a "covered individual," Defendants did not give her the option to apply for PUA.

42. Plaintiff Brawner's claim for PUA rests, in part, on the fact that she was an individual whose place of employment had closed as a direct result of the COVID-19 Pandemic. See Paragraph 22(j), *supra*.

43. Plaintiff Brawner's claim for PUA also rests on the fact that she was an individual who was laid off as a direct result of the COVID-19 Pandemic. See Paragraph 22(n), *supra*.

44. Plaintiff Brawner meets the definitions of "covered individual" found in the CARES Act, Section 2102(a)(3)(A)(ii)(I)(jj) and Section 2102(a)(3)(A)(ii)(I)(kk).

Tyber Ward

45. Plaintiff Ward was employed as a personal caregiver by Links II, Inc., a home health agency, until November of 2019 when his client opted to switch to a new agency.

46. Plaintiff Ward's employer failed to place him with a new client, and he was unable to find a new client on his own.

47. When the restrictions took effect in March of 2020, Plaintiff Ward was still without a client and was unable to find work due to the COVID-19 Pandemic.

48. Plaintiff Ward applied for UI in March of 2020 and was denied.

49. Although Plaintiff Ward met the CARES Act's definition of a "covered individual," Defendants did not give him the option to apply for PUA.

50. Plaintiff Ward's claim for PUA rests, in part, on the fact that his place of employment was effectively "closed" due to the COVID-19 Pandemic due to decreased in-home caregiver job opportunities resulting from mandated "social distancing" measures. See Paragraph 22(j), *supra*.

51. Plaintiff Ward's claim for PUA also rests on the fact that he was an individual who was laid off as a direct result of the COVID-19 Pandemic. See Paragraph 22(n), *supra*.

52. Plaintiff Ward meets the definitions of "covered individual" found in the CARES Act, Section 2102(a)(3)(A)(ii)(I)(jj) and Section 2102(a)(3)(A)(ii)(I)(kk).

Satious Martinez

53. Plaintiff Martinez was a brand new hire at Alorica, another call center, in the midst of on-the-job training when Alorica closed its doors due to the COVID-19 Pandemic.

54. Plaintiff Martinez tried to complete her on-the-job training virtually, from home, but the combination of her ADHD and her employer's unwillingness to accommodate her learning style made virtual on-the-job training impossible.

55. Due to her inability to learn her job duties under these conditions, Plaintiff Martinez was forced to quit her job in April of 2020.

56. Although Plaintiff Martinez met the CARES Act's definition of a "covered individual," Defendants did not give her the option to apply for PUA.

57. On September 1, 2020, through counsel, Plaintiff Martinez attempted to apply for PUA by submitting an improvised letter-style application for PUA.

58. Through a letter dated October 9, 2020, Defendant New Mexico Department of Workforce Solutions, through counsel, implicitly denied the PUA application, stating, "Because (Plaintiff Martinez) is monetarily eligible for standard unemployment, she is not eligible for PUA."

59. On October 16, 2020, through counsel, Plaintiff Martinez attempted to file an administrative appeal of the October 9, 2020 letter, however Defendants neither acknowledged nor processed the appeal.

60. Plaintiff Martinez's claim for PUA rests on the fact that she was forced to quit her job as a direct result of the COVID-19 Pandemic. See Paragraph 22(i), *supra*.

61. Plaintiff Martinez meets the definition of "covered individual" found in the CARES Act, Section 2102(a)(3)(A)(ii)(I)(ii).

Anthony Barela

62. Plaintiff Barela was working as a barber on an independent contractor basis and lost his self-employment in March of 2020 due to the COVID-19 Pandemic.

63. Facing financial hardship and believing he might be eligible for the PUA program, he contacted Defendant Department of Workforce Solutions.

64. He understood that he needed to apply for UI and be denied before his claim for PUA could be processed.

65. Plaintiff Barela applied for UI in March of 2020 and was denied.

66. Finding no option to apply for PUA through Defendant's online claims system, Plaintiff Barela telephoned Defendants via the Department of Workforce Solutions' call center and attempted to apply for PUA via telephone.

67. After he had waited on hold for four hours and explained that he wanted to apply for PUA, a Department claims representative told Plaintiff Barela, "You're not getting any help from us, so don't call back."

68. Although Plaintiff Barela met the CARES Act's definition of a "covered individual," Defendants did not give him the option to apply for PUA.

69. Plaintiff Barela's claim for PUA rests, in part, on the fact that was unable to work due to childcare needs of his nine-year-old daughter, who was no longer able to attend school as a direct result of the COVID-19 Pandemic. See Paragraph 22(d), *supra*.

70. Plaintiff Barela's claim for PUA also rests on the fact that he was self-employed and experienced a significant reduction of his customary or usual services due to the COVID-19 Pandemic. See Paragraph 22(k), *supra*.

71. Plaintiff Barela meets the definitions of "covered individual" found in the CARES Act, Section 2102(a)(3)(A)(ii)(I)(dd) and Section 2102(a)(3)(A)(ii)(I)(kk).

## VI. DEFENDANTS

72. Defendant Ricky Serna is the Acting Secretary of the New Mexico Department of Workforce Solutions.

73. Defendant New Mexico Department of Workforce Solutions is the agency of the State of New Mexico that administers unemployment insurance programs for the State of New Mexico.

74. The acts of Defendants alleged herein were performed by appointed officials or employees of the New Mexico Department of Workforce Solutions acting under color of state law and in their official capacities as agents of the New Mexico Department of Workforce Solutions.

## VII. CLAIMS

**Count One: Violation of the CARES Act**

75. The preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

76. Defendants violated Plaintiffs' rights to access unemployment benefit programs created by the CARES Act, as amended.

77. Defendants acted under color of state law.

78. Upon information and belief, Defendants have a pattern and practice of denying applicants access to the CARES Act benefit programs described herein.

79. Plaintiffs are entitled to a declaratory judgment stating that Defendants' actions relative to the CARES Act programs improperly and illegally excluded Plaintiffs and others similarly situated from the programs and denied them access to benefits to which they had legitimate claim.

80. Plaintiffs are entitled to a declaratory judgment stating that Defendants' actions relative to the CARES Act programs were in violation of the CARES Act, as amended.

81. Plaintiffs are entitled to a permanent injunction preventing Defendants from denying them access to the CARES Act benefit programs described herein.

82. It is in the public interest that Defendants be enjoined from continuing to administer the aforementioned CARES Act programs in a way that denies access to the benefits and programs described herein because if this practice continues not only will it cause Plaintiffs irreparable injury but it will also cause many other similarly situated New Mexicans irreparable injury.

**Count Two: Violation of Due Process Clause of Amendment XIV to the U.S. Constitution**

83. The preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

84. Plaintiffs have a legitimate claim of entitlement to the PUA, FPUC, PEUC benefits at issue here.

85. Defendants acted under color of state law.

86. Defendants, while acting under color of state law, through their actions and omissions, have violated Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution by denying them access to benefits to which they have a legitimate claim of entitlement.

87. Defendants, while acting under color of state law, through their actions and omissions, have violated Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution by failing to provide them with notice and a hearing prior to denying them benefits to which they have a legitimate claim of entitlement.

## Count Three: Violation of the Equal Protection Clause of Amendment XIV to the U.S. Constitution

88. The preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

89. The Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution mandates that the laws of a state must treat an individual in the same manner as others in similar conditions and circumstances.

90. Defendants acted under color of state law.

91. Defendants violated Plaintiffs' rights under the Equal Protection Clause by creating classes of persons relative to eligibility classifications contained in Section 2102 of the CARES Act, and by denying Plaintiffs access to benefits arbitrarily.

92. Defendants, while acting under color of state law, through their actions and omissions, have violated Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution.

## VIII.   RELIEF REQUESTED

A.   Declare that Defendants' actions relative to the CARES Act programs improperly and illegally excluded Plaintiffs and others similarly situated from the programs and denied them access to benefits to which they had legitimate claim,

B.   Declare that Defendants' actions relative to the CARES Act programs were in violation of the CARES Act, as amended,

C.   Declare that Defendants, through their actions, denied Plaintiffs' right to Due Process of law as guaranteed by the Fourteenth Amendment of the U.S. Constitution,

D.   Declare that Defendants, through their actions, denied Plaintiffs' right to Equal Protection under the law as guaranteed by the Fourteenth Amendment of the U.S. Constitution,

E.   Permanently enjoin Defendants, their officers, agents, employees, and attorneys from continuing to deny Plaintiffs access to the relevant CARES Act programs and benefits,

F.   Order Defendants to allow Plaintiffs to apply, and order Defendants to process Plaintiffs' applications for benefits retroactive to February 2, 2020 or the earliest date they are otherwise eligible, and to process those applications immediately,

  G. Grant Plaintiffs reasonable attorney's fees under 42 U.S.C. Section 1988, and their costs,

  H. Grant Plaintiffs such other and further relief against Defendants as is just and proper.

            Respectfully submitted,
            NEW MEXICO LEGAL AID, INC.


             /s/ Alicia Clark
            Alicia Clark
            Attorney for Plaintiffs
            PO Box 25486
            Albuquerque, NM 87125
            Ph: 505-243-7871
            Fax: 505-227-8712
            aliciac@nmlegalaid.org