IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**DANNI LYNN WINTER, SUSAN BRAWNER,**
**TYBER WARD, SATIOUS MARTINEZ, and**
**ANTHONY BARELA,**

        **Plaintiffs,**

                                          **Civ. No. 21-475 JFR/SCY**

   **v.**

**NEW MEXICO DEPARTMENT OF WORKFORCE**
**SOLUTIONS, and RICKY SERNA,** *in his official capacity*
*as Acting Secretary of the New Mexico Department of*
*Workforce Solutions*,

        **Defendants.**

## <u>MEMORANDUM OPINION AND ORDER</u>[1]

      **THIS MATTER** is before the Court on three dispositive motions: *Defendants' Motion to*

*Dismiss* (Doc. 47), which relates to Count One of Plaintiffs' Complaint ("Motion to Dismiss

Count One"), *Defendants' Motion to Dismiss or in the Alternative for Summary Judgment* (Doc.

48), which relates to Counts Two and Three of Plaintiffs' Complaint ("Motion on Counts Two

and Three"), and *Plaintiffs' Motion for Summary Judgment* (Doc. 52) ("Plaintiffs' Motion").

Plaintiffs responded in opposition to Defendants' Motions, and Defendants declined to reply.

Docs. 49, 50, 51, 56.[2]  Defendants did not respond to Plaintiffs' Motion.  Doc. 54.  Thus, each of

these motions is ripe for decision.  *See* D.N.M.LR-Civ. 7.1(b), 7.4(e).

---

[1] Pursuant to 28 U.S.C. § 636(c) and Fed R. Civ. P. 73(b), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment in this case.  Docs. 6-9.

[2] Plaintiffs bifurcated their response to the Motion on Counts Two and Three, submitting one responsive pleading that addresses Defendants' arguments to dismiss, and another that address their arguments for summary judgment. Docs. 50, 51.

The Court, having reviewed the pleadings and applicable law, and being otherwise sufficiently advised, finds that the Motion to Dismiss Count One is not-well taken, and is therefore **DENIED.**  The Court further finds that the Motion on Counts Two and Three is not well-taken insofar as Defendants attack the Court's subject-matter jurisdiction, and it is thus **DENIED** in that respect.  However, the Court finds Defendants' arguments for summary judgment on those claims are well-taken.  Therefore, the Motion on Counts Two and Three is **GRANTED** in that respect, and the Court enters summary judgment for Defendants as to those Counts.  Finally, the Court's entry of summary judgment for Defendants on Counts Two and Three obviates the need to consider Plaintiffs' Motion as to those Counts.  With respect to Count One, the Court, *sua sponte*, finds that Plaintiffs have clearly failed to plead a claim with factual allegations upon which they can ultimately prevail, and that permitting leave to amend their Complaint would prove futile.  Count One is therefore **DISMISSED WITH PREJUDICE.**

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs, Danni Lynn Winter, Susan Brawner, Tyber Ward,[3] Satious Martinez, and Anthony Barela, filed suit against Defendants, the New Mexico Department of Workforce Solutions and its Acting Cabinet Secretary, Ricky Serna, alleging that they have been denied access to federal disaster benefits under The Coronavirus Aid, Relief, and Economic Security ("CARES") Act, 15 U.S.C. § 9001 *et seq.*  Doc. 1 at 1-4.  Passed by Congress as a response to the COVID-19 pandemic, the CARES act took effect on March 27, 2020.[4]  Therein, Congress appropriated relief money "for making payments to States, Tribal governments, and units of

---

[3] Mr. Ward's claims have since been dismissed for failure to prosecute.  Doc. 46.  The Court limits its discussion to the remaining Plaintiffs.

[4] *About the CARES ACT and the Consolidated Appropriations Act*, U.S. Dep't of the Treasury, https://home.treasury.gov/policy-issues/coronavirus/about-the-cares-act (last visited Aug. 16, 2022).

local government."  42 U.S.C. § 801(a)(1); *see also Yellen v. Confederated Tribes of Chehalis Rsrv.*, 141 S. Ct. 2434, 2453 (2021) (Gorsuch, J., dissenting) (observing that the CARES Act "directed trillions of dollars to various recipients across the Nation to help them address the COVID-19 pandemic").

New Mexico received funding from the CARES Act for eligible disbursements.[5]  The CARES Act provided for a benefit known as Pandemic Unemployment Assistance ("PUA").  15 U.S.C. § 9021.  PUA benefits were available to "'covered individual[s]'" who were defined as "individual[s] who [are] not eligible for regular compensation or extended benefits under State or Federal law . . . including . . . individual[s] who ha[ve] exhausted all rights to regular unemployment or extended benefits under State or Federal law."  15 U.S.C. § 9021(a)(3)(A)(i).  As relevant here, a "'covered individual'" also

> (ii) provides self-certification that the individual—
>
>> (I) is otherwise able to work and available for work within the meaning of applicable State law, except the individual is unemployed, partially unemployed, or unable or unavailable to work because—
>>
>>> (aa) the individual has been diagnosed with COVID-19 or is experiencing symptoms of COVID-19 and seeking a medical diagnosis;
>>>
>>> (bb) a member of the individual's household has been diagnosed with COVID-19;
>>>
>>> (cc) the individual is providing care for a family member or a member of the individual's household who has been diagnosed with COVID-19;
>>>
>>> (dd) a child or other person in the household for which the individual has primary caregiving responsibility is unable to attend school or another facility that is closed as a direct result of the COVID-19 public health emergency and such school or facility care is required for the individual to work;

---

[5] *CARES Act*, N.M. Dep't of Fin. Admin., https://www.nmdfa.state.nm.us/budget-division/cares-act/ (last visited Aug. 22, 2022).

(ee) the individual is unable to reach the place of employment because of a quarantine imposed as a direct result of the COVID-19 public health emergency;

(ff) the individual is unable to reach the place of employment because the individual has been advised by a health care provider to self-quarantine due to concerns related to COVID-19;

(gg) the individual was scheduled to commence employment and does not have a job or is unable to reach the job as a direct result of the COVID-19 public health emergency;

(hh) the individual has become the breadwinner or major support for a household because the head of the household has died as a direct result of COVID-19;

(ii) the individual has to quit his or her job as a direct result of COVID-19;

(jj) the individual's place of employment is closed as a direct result of the COVID-19 public health emergency; or

(kk) the individual meets any additional criteria established by the Secretary for unemployment assistance under this section.

§ 9021(a)(3)(A)(ii)(I)(aa)-(kk).  Defendants administered PUA benefits in New Mexico.[6]

Each Plaintiff unsuccessfully applied for Unemployment Insurance ("UI") benefits through the State of New Mexico.  Docs. 1 at 9-14; 48 at 4-6; 53-1 at 1-4, 7-16.  Each Plaintiff also unsuccessfully sought PUA benefits through Defendants.[7]  Docs. 1 at 8-14; 53-1 at 8, 11, 13, 16.  The instant lawsuit commenced on May 21, 2021.  Doc. 1.  Defendants filed their Motion to Dismiss Count One and Motion on Counts Two and Three on May 4, 2022.  Docs. 47, 48.  Plaintiffs Motion was filed on May 20, 2022.  Doc. 52.

---

[6] *End of CARES Act Programs*, N.M. Dep't of Workforce Sols., https://www.dws.state.nm.us/UI-FAQs/category/end-of-cares-act-programs (last visited Aug. 22, 2022).

[7] In their Complaint, Plaintiffs also reference Federal Pandemic Unemployment Compensation ("FPUC") and Pandemic Emergency Unemployment Compensation ("PEUC") benefits, but state that their ability to receive FPUC and PEUC benefits turns on their ability to receive PUA or UI benefits: "Eligibility for FPUC and PEUC derives from underlying eligibility for PUA or UI benefits."  Doc. 1 at 3-4.  In light of the Court's analysis below on PUA and UI benefits, the Court need not reference FPUC and PEUC benefits directly.

Because Article III of the United States Constitution imposes a "threshold requirement" that litigants "who seek to invoke the power of the federal courts must allege an actual case or controversy," *O'Shea v. Littleton*, 414 U.S. 488, 493 (1974), the Court first addresses the Motion to Dismiss Count One and the Motion on Counts Two and Three, as they bear on the Court's exercise of jurisdiction over this case. Concluding that the Court has jurisdiction, it proceeds to address the parties' competing requests for summary judgment in the order they were filed.

## ANALYSIS

### I.      Subject Matter Jurisdiction

#### A.      Legal Standard

Fed. R. Civ. P. 12(b)(1) provides the defense of "lack of subject-matter jurisdiction." An attack on the Court's "subject matter jurisdiction can be either facial or factual." *Holt v. United States*, 46 F.3d 1000, 1002-1003 (10th Cir. 1995). When a complaint's sufficiency is questioned, the attack is facial, and the Court is to "accept the allegations in the complaint as true." *Id.* at 1002. An attack is factual if it looks past the complaint's allegations and strikes at the facts upon which the Court's subject matter jurisdiction hinges. *Id.* at 1003. In the latter situation, the Court "may not presume the truthfulness of the complaint's factual allegations," and may consider extrinsic documents, such as affidavits, to decide factual disputes over subject matter jurisdiction under Rule 12(b)(1) without converting the pleading to a motion for summary judgment. *Id.*

If, however, "the jurisdictional question is intertwined with the merits of the case," it is compulsory that the Court "convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion" or a motion for summary judgment. *Id.* "The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which

provides the substantive claim in the case." *Id.* "[T]he focus of this inquiry is not merely whether the merits and the jurisdictional issue arise under the same statute. Rather, the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim." *Pringle v. United States*, 208 F.3d 1220, 1223 (10th Cir. 2000).

      **B.**     **The Court Has Subject Matter Jurisdiction**

      Defendants' attacks on the Court's subject matter jurisdiction are factual, and therefore the Court is not constrained to the allegations within the four corners of Plaintiff's Complaint, and considers extrinsic information. *See Holt*, 46 F.3d at 1002-1003. The basis of all three Counts of Plaintiff's Complaint is that they were denied access to apply for PUA benefits. Doc. 1 at 4. In their Motion to Dismiss, Defendants argue that "Count One of . . . Plaintiffs' Complaint became moot on March 24, 2022," because on that date, Defendants "provided Plaintiffs with access to apply for PUA benefits under the CARES Act." Doc. 47 at 3, 6. Thus, according to Defendants, because the controversy that forms the basis of Count One has ceased to exist, the Court lacks subject matter jurisdiction. Doc. 47 at 3. Plaintiffs respond that Defendants' assertion is inaccurate. Doc. 49 at 2-3. As support, Plaintiffs provide affidavits that affirmatively state that Defendants either provided no access to apply for PUA benefits at all or provided access that does not allow for a PUA benefits application that encapsulates the entire time period for which some Plaintiffs allege they were entitled to benefits. Doc. 49 at 2-3, 8, 10-12.

      Defendants take the same position in their Motion on Counts Two and Three, arguing that once they "provided . . . Plaintiffs with access, in the form of an internet link, to apply for PUA benefits," the controversy behind these two Counts became moot, and left the Court without subject matter jurisdiction. Doc. 48 at 3. Plaintiffs offer the same response to this

argument as they do above.  Doc. 50 at 2-3.  For the reasons that follow, the Court agrees with Plaintiffs that there is an active controversy with respect to all Counts of this case, and thus the Court has subject matter jurisdiction over their Complaint in its entirety.[8]

Plaintiffs bring all Counts of their Complaint under 42 U.S.C. § 1983.  Doc. 1 at 4. Count One of the Complaint is brought pursuant to the text of the CARES Act, Count Two of the Complaint is brought pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and Count Three is brought pursuant to Equal Protection Clause of the Fourteenth Amendment to the United Sates Constitution.  Doc. 1 at 14-16.  Accordingly, the question of subject matter jurisdiction—whether a live controversy exists between the parties—is properly resolved under Rule 12(b)(1), because it is not contingent on the statute which provides Plaintiffs' substantive claims in this action.  *See Holt*, 46 F.3d at 1003.

Defendants have indicated that they remedied the alleged harms that form the basis of Plaintiffs' Complaint, but Plaintiffs vigorously dispute this representation, and have produced affidavits in support of their position that Defendants have not actually done this.  Docs. 47 at 3, 6; 48 at 3; 49 at 2-3, 8, 10-12.  Defendants, conversely, have done nothing to counter Plaintiffs' position.  In fact, Defendants declined to reply to Plaintiffs' responsive briefing, and thus have not offered their own responsive argument to the evidence and assertions Plaintiffs brought forth. Doc. 56.  Accordingly, the Court finds that the controversy between the parties has not been resolved.  To the contrary, it is apparent to the Court that the parties actively dispute whether one Plaintiff is able to access the website to seek PUA benefits at all, and whether the remaining Plaintiffs are able to gain meaningful access to the same website.  *See* Docs. 49 at 8-16; 50 at 8-

---

[8] Defendants also argue against the Court employing the voluntary cessation doctrine.  Docs. 47 at 3-4, 48 at 3. Because the Court has concluded that Plaintiffs have sufficiently invoked this Court's subject matter jurisdiction over their claims as there appears to be a live controversy between the parties, the Court does not reach this argument.

16. On these facts, the Court concludes that Plaintiffs have properly asserted jurisdiction, and the Court will exercise that jurisdiction over the claims in Plaintiffs' Complaint. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 376 (1994) (noting that "the burden of establishing" the Court's jurisdiction "rests upon the party asserting jurisdiction").

## II.    Summary Judgment

### A.    Legal Standard

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). "The movant bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. Once the movant meets this burden, Rule 56(c) requires the non-moving party to designate specific facts showing that there is a genuine issue for trial." *Whitehead v. Mgmt. & Training Corp.*, 524 F. Supp. 3d 1155, 1166 (D.N.M. 2021) (internal quotation marks and citations omitted). "A dispute is genuine if there's enough evidence on each side that a rational trier of fact could resolve the issue either way." *Rose ex rel. Rose v. Brown*, 14 F.4th 1129, 1138 (10th Cir. 2021). A showing that "no genuine issue as to any material fact" exists is made through "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003) (internal quotation marks and citation omitted). In the resolution of a summary judgment motion, the Court construes the evidence before it "in the light most favorable to the non-moving party." *Adair v. City of Muskogee*, 823 F.3d 1297, 1304 (10th Cir. 2016) (internal quotation marks and citation omitted). But the Court will not weigh evidence or decide issues of credibility. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255 (1986).

8

B.     **Undisputed Material Facts**

The following facts, as presented by Defendants in the Motion on Counts Two and Three are undisputed by Plaintiffs, and the Court adopts them for purposes of the analysis that follows. Docs. 48 at 4-6; 51 at 1-2. To the extent Plaintiffs "note" that facts relating to administrative remedies for UI benefits "are not relevant or material," the Court disagrees and finds that they are properly supported. Doc. 51 at 1-2; *see* Fed. R. Civ. P. 56(c)(1)(A) (listing what a party properly may cite as support for a factual assertion, including affidavits).

1.     *Plaintiff Winter*

- Plaintiff Winter applied for UI benefits through Defendants. Her application was denied.

- Plaintiff Winter was prohibited from applying for PUA benefits because, while she was monetarily eligible for UI benefits, she was disqualified from receiving them because she voluntarily left her job without good cause connected to the work.

- Plaintiff Winter did not exhaust the administrative remedies available to her as a result of her disqualification from receiving UI benefits.

Doc. 48 at 4-5, 11.

2.     *Plaintiff Brawner*

- Plaintiff Brawner applied for UI benefits through Defendants. Her application was denied.

- Plaintiff Brawner was prohibited from applying for PUA benefits because, while she was monetarily eligible for UI benefits, she was disqualified from receiving them because she voluntarily left her job without good cause connected to the work.

- Plaintiff Brawner did not exhaust the administrative remedies available to her as a result of her disqualification from receiving UI benefits.

Doc. 48 at 5, 11.

3. *Plaintiff Martinez*

- Plaintiff Martinez applied for UI benefits through Defendants.  Her application was denied.

- Plaintiff Martinez was prohibited from applying for PUA benefits because, while she was monetarily eligible for UI benefits, she was disqualified from receiving them because she voluntarily left her job without good cause connected to the work.

- Plaintiff Martinez did not exhaust the administrative remedies available to her as a result of her disqualification from receiving UI benefits.

Doc. 48 at 5-6.

4. *Plaintiff Barela*

- Plaintiff Barela applied for UI benefits through Defendants.  His application was denied.

- Plaintiff Barela was prohibited from applying for PUA benefits because, while he was monetarily eligible for UI benefits, he was disqualified from receiving them because he left his job without good cause connected to the work.

- Plaintiff Barela did not exhaust the administrative remedies available to him as a result of his disqualification from receiving UI benefits.

Doc. 48 at 6, 12.

**C.    Summary Judgment for Defendants is Proper on Counts Two and Three**

In their Motion on Counts Two and Three, Defendants present an overarching argument that there are no genuine issues of material fact as to Plaintiffs' position that they were (1) denied UI benefits and (2) not permitted to apply for PUA benefits.  Doc. 48 at 4-6.  Specifically, they argue that Plaintiffs were not ineligible for UI benefits—a perquisite for the receipt of PUA benefits; rather, according to Defendants, Plaintiffs were monetarily *eligible* for UI benefits, but were *disqualified* from receiving those benefits "due to a separation issue."  Doc. 48 at 8-9.

Plaintiffs invoke 42 U.S.C. § 1983 as the basis to remediate the harm alleged in all

Counts of their Complaint.  Doc. 1 at 4.  "To state a claim under § 1983, a plaintiff must allege

the violation of a right secured by the Constitution and laws of the United States, and must show

that the alleged deprivation was committed by a person acting under color of state law."  *West v.*

*Atkins*, 487 U.S. 42, 48 (1988).  The starting point for a § 1983 claim is to identify the particular

constitutional right or federal law purportedly contravened.  *Albright v. Oliver*, 510 U.S. 266,

271 (1994).

       *1.*     *Count Two – Due Process*

As to Count Two, Plaintiffs' due process claim,[9] Defendants argue that Plaintiffs' failure

to exhaust the administrative remedies available to them after they were prohibited from

collecting UI benefits renders this claim null.  Doc. 48 at 6-7.  Plaintiffs emphasize the perceived

property interest that forms the basis of Count Two, which they allege is their "legitimate claims

of entitlement to the benefits at issue."  Doc. 51 at 2-4.  This entitlement, they contend, is found

in the CARES Act itself: "In enacting the CARES Act, Congress intended Plaintiffs to have

access to the PUA benefit program."  Doc. 51 at 3 (citation omitted).  In claims alleging the

deprivation of property without due process, "precedents establish the general rule that

individuals must receive notice and opportunity to be heard before the Government deprives

them of property."  *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993).  The

Court takes guidance from a handful of other cases that involved the receipt, or lack thereof, of

PUA benefits.  While none is directly on point, each is instructive.

---

[9] Defendants argue that Count Two of Plaintiffs' Complaint does not raise a substantive due process claim and is thereby limited only to a claimed violation of procedural due process.  Doc. 48 at 7.  While, in the Court's view, Plaintiffs' Complaint is not that perspicuous, Plaintiffs' response to the Motion on Counts Two and Three makes plain that only procedural due process, or alleged lack thereof, is at issue, and the Court's analysis is limited accordingly. *Compare* Doc. 1 at 15-16, *with* Doc. 51 at 2-4.

Earlier this year, the Appellate Division of the Superior Court of New Jersey (Appellate Court) issued its opinion in *Sullivan v. Bd. of Rev., Dep't of Lab.*, 272 A.3d 44 (N.J. Super. Ct. App. Div. 2022). There, the plaintiff quit his job as a chef because he was dissatisfied with his compensation and commute. *Id.* at 46. Shortly after the start of the COVID-19 pandemic, he applied for unemployment benefits through the New Jersey Division of Unemployment and Temporary Disability Insurance (Division) and received eight weeks' worth of benefits from the CARES Act, which ceased because he began a new job. *Id.* About one month later, the Division notified the plaintiff that he was "disqualified for benefits" because his "reason for leaving" his job as a chef did "not constitute good cause attributable to the work," thus precluding him from receiving PUA benefits under the CARES Act. *Id.* at 46-47. Accordingly, the Division imposed upon the plaintiff a liability to refund the amount of unemployment benefits he received. *Id.* at 47.

In upholding the liability imposed upon the plaintiff, the Appellate Court explained that the plaintiff's ability to collect PUA benefits was directly tied to New Jersey's unemployment compensation laws. *Id.* Specifically, New Jersey law disqualifies an individual from receiving unemployment benefits if he "has left work voluntarily without good cause attributable for such work." *Id.* (quoting N.J. Stat. Ann. § 43:21-5(a) (2018)). It continued:

> The CARES Act expanded eligibility [for unemployment benefits], under the PUA program, for payment of benefits to certain categories of individuals. Thus, when [the plaintiff] was determined to be disqualified for state benefits . . . the Division had determined whether he was a covered individual under the PUA even if he was not unemployed for an expanded reason through the CARES Act. The Division determined, however, that [the plaintiff] left work voluntarily without good cause attributable, which disqualifies him under the PUA.

*Id.* at 48. The situation presented in the instant case is analogous. The plaintiff in *Sullivan* was disqualified from receiving state benefits because he quit his job for reasons that did not constitute good cause, like Plaintiffs here. *Compare id.*, *with* Doc. 48 at 4-6. The Court

12

understands that the difference between *Sullivan* and the instant case is that the plaintiff in *Sullivan* applied for and received PUA benefits, while Plaintiffs here could not even apply.  But the plaintiff in *Sullivan* was ordered to return the benefits he received after it was determined that he was disqualified from receiving state unemployment benefits for the same reason he could not receive PUA benefits—there was no good cause attached to his resignation.  272 A.3d at 46-48.  The same is true here.  Plaintiffs do not dispute that each of them voluntarily resigned their employment without good cause connected to the work, which renders them disqualified for UI benefits under New Mexico law.  *See* N.M. Stat. Ann. § 51-1-7(A)(1) (2011) (disqualifying from UI benefits eligibility individuals who "left employment voluntarily without good cause in connection with the employment").  On the undisputed material facts, there is no provision of the CARES Act that renders Plaintiffs eligible for PUA benefits.  *See* 15 U.S.C. § 9021(a)(3)(A)(i)-(ii).

Likewise, the Court rejects Plaintiffs' contention that they have a property interest in CARES Act benefits.  In *Moss v. Lee*, No. 21-CV-561, 2022 WL 68388 (D. Tenn. Jan. 6, 2022), a federal district court rejected a similar argument, because

> the CARES Act created *temporary* federal benefits to *supplement* state benefit programs. . . . That the CARES Act's supplemental programs enhanced state benefits does not mean the CARES Act created state property rights in those benefits for two reasons.  First . . . there is no private right of action under the CARES Act for supplemental federal benefits.  Second, federal law specifically allows states to exercise discretion in ending their distribution of the federal supplemental benefits.  Such discretion is enough to place the benefit outside the scope of a property interest.  [T]he CARES Act not only fails to limit discretion, but it also specifically grants the state the sole discretion to terminate the federal supplemental benefits.  The existence of provisions that retain for the state significant discretionary authority over the bestowal or continuation of a government benefit suggests that the recipients of such benefits have no entitlement to them.

*Id.* at *6 (internal quotation marks and citations omitted).  The Court is persuaded by this analysis.

In concluding that Defendants are entitled to judgment as a matter of law on Plaintiffs'

due process claim, the Court begins by heeding the first principle that underlies the conclusion in

*Moss*, i.e., that a private right of action, express or implied, for supplemental federal benefits is

absent from the CARES Act, and takes note of its presence in other, similar litigation.  *See, e.g.*,

*Graham v. Payne*, No. 21-CV-888, 2022 WL 815138, at *2 (N.D. Ind. Mar. 17, 2022)

("[S]everal district courts have held that there is no private right of action under the CARES

Act); *McClendon v. Bernard*, No. 21-CV-823, 2021 WL 5567369, at *2 (E.D. Ark. Nov. 29,

2021) ("[T]he CARES Act does not create a private right of action.").  Next, the Court echoes an

apt observation from *Moss*—that being, the Court is unaware of, and the Plaintiffs have not

otherwise provided direction to, any case in which a court has found a property interest to exist

in CARES Act benefits.  *See* 2022 WL 68388, at *6.  Indeed, *Dickerson v. Texas*, No. 21-CV-

2729, 2021 WL 4192740 (S.D. Tex. Sept. 15, 2021), provides a fitting example of this principle

and the discretionary role played by the state in the receipt and administration of supplemental

federal benefits from the CARES Act.  There, the plaintiffs argued that they were deprived of

procedural due process because Texas ended participation in federal supplemental

unemployment benefits from the CARES Act without providing them "notice or an opportunity

to be heard."  *Id.* at *1-2.  In rejecting this claim, *Dickerson* highlighted the nature of the benefits

at issue—that they were "additional benefits" that were "not protected, nor [were] they

entitlements."  *Id.* at *3; *see also Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) ("The

procedural component of the Due Process Clause does not protect everything that might be

described as a 'benefit': To have a property interest in a benefit, a person clearly must have more

than an abstract need or desire and more than a unilateral expectation of it.  He must instead have

a legitimate claim of entitlement to it." (internal quotation marks and citation omitted)).[10]  The

underlying rationale in *Dickerson* carries over here.  Plaintiffs were not stripped of a protected

entitlement without process.  *See Gonzales*, 545 U.S. at 756 (noting that "a benefit is not a

protected entitlement if government officials may grant or deny it in their discretion").  Rather,

the UI benefits to which Plaintiffs were found eligible but disqualified from were protected

entitlements with safeguards in place to ensure sufficient process, but it is undisputed that

Plaintiffs elected not to exhaust those administrative remedies.

For all these reasons, the Court concludes that there are no disputed material facts that

necessitate a trial on Count Two.  Therefore, summary judgment for Defendants is proper on this

claim.  The Court looks next to Count Three, Plaintiffs' equal protection claim.

## 2.    *Count Three – Equal Protection*

As to Count Three, Defendants argue that "Plaintiffs do not allege that they are part of a

protected class of people who have been discriminated against," and thus, they contend, there is

an absence of a "presumption of an intent to discriminate."  Doc. 48 at 9.  Plaintiffs counter that,

though they do not fall into a categorically protected class, it is clear that they were intentionally

discriminated against by Defendants.  Doc. 51 at 6.  Specifically, they state that "the evidence

that Defendants' policy of treating Plaintiffs differently from other potential PUA claimants

based upon their underlying monetary eligibility for UI benefits is ample."  Doc. 51 at 6.  The

parties agree that, assuming Plaintiffs were treated differently from others similarly situated, the

appropriate test under which to examine Defendants' actions is rational basis.  Docs. 48 at 9; 51

at 7.

---

[10] The Court pauses to recognize that there is a distinction between *Dickerson* and the claim at issue here; indeed, the *Dickerson* plaintiffs were contesting Texas's decision to end participation in federal supplemental unemployment benefits under the CARES Act, while Plaintiffs are claiming a property interest in federal supplemental benefits for which they were never allowed to apply.  *Compare* 2021 WL 4192740, at *1, *with* Doc. 51 at 3.

The Court's research reveals few cases that have been brought in a similar context with an equal protection violation alleged.  However, the Court takes guidance from what is available, bearing in mind that the principles that underlie any traditional, alleged violation of equal protection are at play here as well.  The root of equal protection "is that the state treat all those similarly situated similarly, with its central purpose being the prevention of official conduct discriminating on the basis of race or other suspect classifications.  As such, equal protection only applies when the state treats two groups, or individuals, differently." *Powers v. Harris*, 379 F.3d 1208, 1215 (10th Cir. 2004) (alterations, internal quotation marks, and citations omitted).

Last year, a federal district court in this Circuit rejected a plaintiff's argument that the state denied him equal protection after he alleged that he did not receive the total amount of unemployment benefits he was entitled to under the CARES Act.  *Queen v. Kelly*, No. 21-CV-2229, 2021 WL 2935897, at *2, *4 (D. Kan. July 13, 2021).  In *Queen*, the plaintiff brought an equal protection claim but did not "allege facts sufficient to show that he was treated differently from others with whom he is similarly situated and that the unequal treatment was the result of unequal or purposeful discrimination."  *Id.* at *4 (internal quotation marks and citation omitted). Rather, the plaintiff alleged that the state engaged in a practice of underpaying all recipients of unemployment benefits.  *Id.* at *3-4.  Thus, the *Queen* Court reasoned, the plaintiff did not show how he, individually, was treated in a manner disparate from other individuals similarly situated. *Id.* at *4.  Accordingly, because the plaintiff advanced "merely conclusory" allegations without "the factual basis for an equal protection claim," his claim failed.  *Id.*  While *Queen* was not decided on summary judgment grounds, *see id.* at *1, the Court takes guidance from its underpinnings, procedural posture notwithstanding.

Here, the parties do not dispute that Plaintiffs were not permitted to apply for PUA benefits, and that this occurred because Plaintiffs were eligible for UI benefits but disqualified from receiving the same for voluntarily leaving their employment without good cause related to the work.  As was true of the plaintiff in *Queen*, Plaintiffs' position on their equal protection claim can be distilled to a conclusory statement: they were intentionally discriminated against by Defendants.  Doc. 51 at 6-7.  2021 WL 2935897, at *4.  This statement, standing in isolation, does not demonstrate the existence of a disputed material fact. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664 (10th Cir. 1998) ("Vague, conclusory statements do not suffice to create a genuine issue of material fact.").  Indeed, while Plaintiffs claim the evidence of Defendants' intentional discrimination is "ample," they have not provided a single example of an individual similarly situated but treated differently by Defendants, i.e., a person who qualified for UI benefits but was disqualified from receiving them because they voluntarily quit their job without good cause related to the work but was permitted by Defendants to apply for PUA.  Doc. 51 at 6. On the contrary, what evidence Plaintiffs have produced seems to indicate that all individuals in Plaintiffs' situation were treated the same.  Specifically, Exhibit G of Plaintiffs' Summary Judgment Response to the Motion on Counts Two and Three is a screenshot of Defendants' website which states that only those individuals deemed monetarily ineligible for UI benefits would be supplied with a link to apply for PUA.  Doc. 51 at 15.  The Court will not develop additional argument on Plaintiffs' behalf.  *See Bunn v. City and Cnty. of Denver*, No. 14-CV-2500, 2015 WL 6153392, at *1, *3 (D. Colo. Oct. 20, 2015) (ruling on summary judgment motions and citing *Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) for the proposition that courts need not entertain "undeveloped and perfunctory arguments"); *see also LNV Corp. v. Hook*, No. 14-CV-955, 2017 WL 11487877, at *3 (D. Colo. Mar. 14, 2017)

17

(declining to consider "arguments and allegations [that] are conclusory and unsubstantiated" in ruling on a summary judgment motion).

On this record, the Court concludes that that there are no disputed material facts as to Count Three. Therefore, summary judgment for Defendants is proper on this claim. Finally, the Court turns to Plaintiff's Motion.

**D.      Plaintiff's Have Failed to Plead a Viable Claim in Count One**

In Plaintiff's Motion, they argue that they have "legitimate claims of entitlement to the benefits at issue." Doc. 53 at 10. Relevant here, they contend that this entitlement is bestowed by the CARES Act's definition of a "covered individual" eligible for PUA assistance, outlined in its entirety above. Doc. 53 at 10. Defendants did not respond to Plaintiff's Motion. Doc. 54. Plaintiff correctly notes that, pursuant to the Local Rules of Civil Procedure, the failure of litigants to timely file a response opposing the relief sought by a movant amounts to acquiescence in the grant of the motion. Doc. 54 (citing D.N.M.LR-Civ.7.1(b)). However, the Court is constrained to the use of this rule only in those situations where the relief sought is properly granted. *Baumeister v. N.M. Comm'n for the Blind Adult Orientation Ctr.*, 425 F.Supp.2d 1250, 1268-69 (D.N.M. 2006) ("Pursuant to D.N.M.[]LR-Civ.7.1(b), the [c]ourt treats an issue to which no timely response is made as unopposed and resolves the issue in favor of the moving party, unless it would be incorrect or improper to do so."). As the Court explains below, because Plaintiffs have clearly failed to plead a claim with factual allegations upon which they can ultimately prevail and permitting leave to amend their Complaint would prove futile, the Court dismisses Count One, which obviates the need to consider Plaintiff's Motion.

Fed. R. Civ. P. 12(b)(6) provides for dismissal upon motion evincing that a plaintiff has "fail[ed] to state a claim upon which relief can be granted." In the Tenth Circuit, *sua sponte*

dismissals are "disfavor[ed]," though the Court may *sua sponte* dismiss a claim under Rule 12(b)(6) without committing reversible error if "it is patently obvious that the plaintiff could not prevail on the facts alleged and allowing . . . an opportunity to amend [the] complaint would be futile." *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) (internal quotation marks and citation omitted).  Indeed, this Court "has the authority to raise issues regarding the failure to state a claim, whether or not those issues are asserted in the motions to dismiss." *Frank v. Bush*, No. 09-4146, 2010 WL 1408405, at *4 (D. Kan. Apr. 2, 2010), *aff'd*, 391 F. App'x 745 (10th Cir. 2010).

To survive dismissal under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This requires the Court to decide whether "the complaint alone is *legally sufficient* to state a claim for which relief may be granted," and to refrain from appraising "potential evidence that the parties might present at trial." *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (emphasis added) (internal quotation marks and citation omitted).  Indeed, the Court "cannot review matters outside of the complaint." *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991).  The Court views the allegations that comprise a claim "in the light most favorable to the plaintiff." *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013).

In Count One of their Complaint, Plaintiffs allege that "Defendants violated [their] rights to access unemployment benefit programs created by the CARES Act" because Plaintiffs were not able to apply for PUA benefits.  Doc. 1 at 7-8, 14.  As a remedy, they seek "a declaratory judgment stating that Defendants' actions relative to the CARES Act programs were in violation of the CARES Act."  Doc. 1 at 15, 17. They further seek a permanent injunction enjoining Defendants from prohibiting Plaintiffs from applying for the benefits at issue under the CARES

Act.  Doc. 1 at 15, 17.  The Court concludes that Plaintiffs have not alleged a violation of federal law. [11]

Assuming the allegation in Count One is true, as the Court must, *see Zinermon v. Burch*, 494 U.S. 113, 118 (1990), dismissal is appropriate because, as outlined above, there is no private right of action created by the supplemental employment benefit provisions of the CARES Act. *See Graham v. Payne*, 2022 WL 815138, at *2; *Moss*, 2022 WL 68388, at *5-6; *McClendon*, 2021 WL 5567369, at *2; *see also Johnson v. JPMorgan Chase Bank, N.A.*, 488 F. Supp. 3d 144, 155, 157-58 (S.D.N.Y. 2020) ("Even if plaintiffs had a viable argument on the merits (which they do not), the [c]ourt would dismiss their declaratory judgment claims for an independent reason: there is no private cause of action to enforce this provision of the CARES Act."). Though *Johnson* was decided in the context of the Paycheck Protection Program ("PPP"), 15 U.S.C. § 636(a)(36), a different provision of the CARES Act than that invoked by Plaintiffs in the instant case, the Court adopts its reasoning here as the plaintiffs in *Johnson* sought declaratory relief, the same form of relief Plaintiffs seek in Count One.  488 F. Supp. 3d at 149.

The *Johnson* Court approached its assessment of the plaintiffs' claim for relief as follows:

> The Declaratory Judgment Act[12] authorizes federal courts to declare rights and other legal relations of any interested party seeking declaration, whether or not further relief is or could be sought.  The operation of the Declaratory Judgment Act is procedural only, however, and does not create an independent cause of action. Accordingly, [the] plaintiffs may only seek declaratory judgment under the CARES Act if there is a private cause of action under that statute.

*Id.* at 157 (internal quotation marks and citations omitted).  It continued:

---

[11] As already mentioned, Plaintiffs seek to use 42 U.S.C. § 1983 as the vehicle to present their claims.  Doc. 1 at 4. Again, the first component of a successful claim under § 1983 is demonstrating "the violation of a right secured by the Constitution and laws of the United States." *West*, 487 U.S. at 48.  Plaintiff's do not allege a constitutional violation in Count One.  Rather, they claim the rights that were violated by Defendants in Count One were created entirely by the CARES Act.  Doc. 1 at 14-15.  The Court's analysis is limited accordingly.

[12] 28 U.S.C.§ 2201(a)

> The CARES Act does not contain an express cause of action to enforce the PPP. Whether there exists an implied cause of action turns on whether there is a clear manifestation of congressional intent to create one. Such a clear manifestation exists where the statute's text and structure show an intention to create a federal right through rights-creating language, and intention to create a private remedy, and consistency of a private remedy with the statutory scheme. . . . The [c]ourt . . . holds . . . that [the] plaintiffs' declaratory judgment claims must be dismissed because [the] plaintiffs have failed to identify an underlying substantive cause of action.

*Id.* at 157-58 (internal quotation marks and citation omitted). Like the plaintiffs in *Johnson*, so too have Plaintiffs fallen short of presenting a cause of action on Count One. In fact, Plaintiffs have not even directed the Court to a location in the CARES Act where they claim a private cause of action is created to vindicate the rights they believe they possess under the statute. Rather, Plaintiffs' Complaint cites only the provision of the CARES Act defining "'covered individual[s],'" 15 U.S.C. § 9021(a)(3). Doc. 1 at 5-7, 9-10, 12, 14. For purposes of the Court's analysis here, this is insufficient. *See Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) (noting that the Court is "not bound by conclusory allegations, unwarranted inferences, or legal conclusions"); *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) ("[M]ere labels and conclusions . . . will not suffice." (internal quotation marks and citation omitted)).

Therefore, as to Count One, the Court concludes that Plaintiffs have failed to plead a claim upon which they can obtain relief. Because there is no right of action available to Plaintiffs to successfully obtain the relief they seek in Count One, the Court further concludes that providing Plaintiffs leave to amend their Complaint to correct the deficiencies identified above would prove futile. Accordingly, Count One is dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Count One is **DENIED.** Defendant's Motion on Counts Two and Three is **DENIED** insofar as it attacks the Court's

subject-matter jurisdiction but **GRANTED** with respect to Defendants' request for summary

judgment as to Counts Two and Three.  Therefore, Plaintiffs' Motion is moot insofar as they

seek summary judgment on Counts Two and Three.  Finally, Count One is **DISMISSED WITH**

**PREJUDICE** because it is not a viable claim.

    **IT IS SO ORDERED.**

**JOHN F. ROBBENHAAR**
United States Magistrate Judge,
Presiding by Consent